## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Alfonso Amelio; <br><br> Clemente Amelio; and <br><br> Carmine Amelio <br><br>       PLAINTIFF(S) <br><br>     vs. <br><br> McCabe, Weisberg & Conway, P.C.; <br><br> Fein, Such & Crane LLP; <br><br> Seterus, Inc.; <br><br> Ocwen Loan Servicing, LLC; <br><br> OneWest Bank, FSB; <br><br> Quicken Loans, Inc.; <br><br> Federal National Mortgage Association; and <br><br> Concrete Properties, LLC <br><br>       DEFENDANTS | CIVIL ACTION NO.: 1:19-CV-08761-ALC <br><br> *Civil Action* <br><br><br> **FIRST AMENDED COMPLAINT** <br> **<u>JURY TRIAL DEMANDED</u>** |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-27-19

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiffs, Alfonso Amelio and Clemente Amelio, together with Carmine Amelio by joinder pursuant to Fed. R. Civ. P.'s 19 and 20, hereby submits this First Amended Complaint against Defendants for declaratory and injunctive relief, along with compensatory, punitive and treble (where applicable) damages for a minimum claim of $1,000,000,000.00 ($1 Billion), and in support thereof, states as follows:

## NATURE OF ACTION

This action arises from the injuries sustained by Plaintiffs arising from certain Defendants specified below conspiring to operate an unlawful enterprise and scheme for unjust enrichment, theft of monies and real property in this District by inducing the petitioners into executing a fraud *in factum* – falsely uttered - unconscionable - predatory (*per se*) transaction misrepresented to be a traditional residential mortgage loan.

At all times relevant to the instant matter, certain Defendants specified below acting as enterprise together with non-parties to this complaint which includes state commissioned notary publics employed by the enterprise, have used the mail and wire to further their unjust enrichment, attempted and actual theft of monies and real property belonging to Plaintiffs arising from a fraud in factum transaction, by creating, trafficking and presenting falsely uttered – forged monetary instruments with values in excess of $5,000.00, consisting of: (1) misrepresentations of fact concerning the character and legality of the transaction complained of herein: (2) misrepresentations of fact regarding alleged ownership, possession, and considerations declared paid for the original instruments complained of herein: (3) imposters lacking the capacities claimed, knowledge about the legality, character, alleged ownership, and or possession of the original instruments complained of herein; and/or (4) false acknowledgements.

Certain Defendants identified below, after causing summons to be issued against Plaintiffs in an illegally commenced foreclosure debt collection action before the Supreme Court of New York – Orange County, secured a final judgment against the Plaintiffs through tampering with and fabricating evidence which constitutes abuse of process, a cause of action herein, and Plaintiff's state court motions to set-aside and appeals (if necessary). Certain Defendants were

2

further unjustly enriched by proceeds from an illegal Referee Sale held on September 20, 2019, followed by a Referee's Deed that designating the third-party named a Defendant herein that is void *ab initio* as a matter of fact and law.

The Plaintiffs' complaint sets for a "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendants "fair notice of what the ... claim is and the grounds upon which it rests," (*Conley v. Gibson*, 355 U. S. 41, 47 (1957)), while establishing claims independent of the State Court Action complained of herein including, but not limited to, abuse of process, in order to overcome any attempted defense based upon *Rooker-Feldman*, *Res Judicata*, the *Colorado River* abstention doctrine and/or statute of limitations, for the reasons set forth below:

## PARTIES

1.      Plaintiff Alfonso Amelio ("Alfonso") is a resident of the State of New York, and the sole obligor for a certain transaction in dispute dated August 9, 2006 and memorialized within an electronic promissory note, a paper promissory note and security instrument for which Plaintiff was induced into signing and pledging an interest in his property known as 68 Crotty Road, Middletown, NY 10940 ("subject property") to certain defendants identified below.

2.      Plaintiff Clemente Amelio ("Alfonso") is a resident of the State of New York, and "co-mortgagor" who was induced into signing the aforementioned security instrument dated August 9, 2006 and pledging the subject property to certain defendants identified below.

3.      Plaintiff Carmine Amelio ("Carmine") is a dual resident of the State of New York and Connecticut, and brother of Plaintiff Alfonso Amelio. Plaintiff Carmine, at all times relevant to this matter, held a substantial interest in the subject property that served as a key component of a residential rental business and income shared between the Plaintiffs, wherein

Carmine invested time and monies towards property management duties, repairs and legal actions involving the subject property. The Plaintiffs are hereafter collectively referred to as "the Amelio's".

4.      Upon information and belief, Defendant McCabe, Weisberg & Conway, LLC formerly known as McCabe, Weisberg & Conway, P.C. ("MWC") is a limited liability company organized and existing pursuant to the laws for the State of Pennsylvania. Defendant MWC's primary business is third-party debt collection activities and default services as counsel of record in state foreclosure proceedings and bankruptcy matters on behalf of residential mortgage debt collectors for properties located in New York. Defendant may be served with process of this court upon its registered agent, Corporation Service Company, located 80 State Street, Albany, New York, 12207.

5.      Upon information and belief, Defendant Fein, Such & Crane LLP ("FSC") is a limited liability partnership organized and existing pursuant to the laws for the State of New York. Defendant FSC's primary business is third-party debt collection activities and default services as counsel of record in state foreclosure proceedings and bankruptcy matters on behalf of residential mortgage debt collectors for property located in New York. Defendant may be served with process of this court upon its principal, Howard R. Crane, or upon any officer at Defendant's principal place of business located at 28 E Main Street, Suite 1800, Rochester, New York, 14614.

6.      Upon information and belief, Defendant Seterus, Inc. ("Seterus") is a corporation organized and existing pursuant to the laws for the State of Delaware. Defendant Seterus' primary business is debt collection activities and default services for residential mortgage loans encumbering property located in New York. Defendant may be served with process of this court

upon its registered agent, The Corporation Trust Company, located Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

7.     Upon information and belief, Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a limited liability company and wholly owned subsidiary of non-party Ocwen Financial Corporation ("OFC"), organized and existing pursuant to the laws for the State of Delaware. Defendant Ocwen's primary business is debt collection activities and default services for residential mortgage loans encumbering property located in New York.  At all times relevant to this matter, Ocwen and or its affiliates were named parties and bound to perform under the consent judgment entered by the United States District Court for the District of Washington D.C. (Case No. 1:13-cv-02025-RMC) on February 26, 2014 in Consumer Financial Protection Bureau, et al. v. Ocwen Loan Servicing, LLC, et al., to address concerns with Ocwen's unfair – deceptive - unlawful residential mortgage servicing practices and Ocwen's initiation and handling of foreclosure proceedings.  Defendant may be served with process of this court upon Ronald M. Faris as Chief Executive Officer ("CEO"), or upon any officer or authorized agent at Defendant's principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409.

8.     Upon information and belief, Defendant OneWest Bank National Association formerly known as OneWest Bank, FSB ("OneWest") is a division of non-party to this complaint, CIT Bank, National Association ("CIT Bank"), and a Federal Savings Bank organized pursuant to and under the national banking laws of the United States of America. Defendant OneWest's primary business is debt collection activities and default services for residential mortgage loans encumbering property located in New York.  At all times relevant to this matter, OneWest and or its affiliates were parties named and bound to performance under a

Consent Order that was issued on April 13, 2011 by the Office of Thrift Supervision (OTS), the provisions of which were reaffirmed by a Consent Order issued by the Office of the Comptroller of the Currency (OCC) in 2014 at the time OneWest converted its charter from a thrift to a national bank (the OTS order and OCC order are collectively referred to as Consent Order), to address concerns with OneWest's residential mortgage servicing practices and OneWest's initiation and handling of foreclosure proceedings. Defendant may be served with process of this court upon its CEO, Ellen Alemany, or upon any officer at Defendant's primary place of business located at 75 North Fair Oaks Avenue, Pasadena, California 91103.

9.     Upon information and belief, Defendant Quicken Loans, Inc. ("Quicken") is a corporation organized and existing pursuant to the laws for the State of Michigan. Defendant Quicken's primary business is the origination and securitization of residential mortgage loans encumbering property located in New York. Defendant may be served with process of this court upon its CEO, Jay David Farner, or upon any officer at Defendant's primary place of business located at 1050 Woodward Avenue, Detroit, Michigan 48226.

10.    Upon information and belief, Federal National Mortgage Association ("Fannie Mae") is a government-sponsored enterprise ("GSE") under the conservatorship of non-party to this action, the Federal Housing Finance Agency ("FHFA"), that was established in the year 1938. In the year 1954, the United States Congress passed the Federal National Mortgage Association Charter Act which converted the Defendant into a public-private, mixed ownership corporation, until the year 1968, when Fannie Mae became entirely privately owned. Today, the Defendant advertises that it primary function within the residential mortgage business includes the purchasing of residential mortgages on the secondary market, wherein Fannie Mae purportedly retains some mortgage loans in its portfolio of investments, and the majority of the

loans are securitized by collecting a group of similar home mortgage loans (called a pool of loans), then issuing securities (called mortgage-backed securities) that represent an ownership interest in the pool of loans. Defendant may be served with process of this court upon Timothy J. Mayopoulos as CEO, or upon any officer or authorized agent at Defendant's principal place of business located at 3900 Wisconsin Avenue, N.W., Washington, D.C., 20016.

11.    Upon information and belief, the Defendants set forth above in ¶¶4-10 are non-member affiliates and/or members of non-party MERSCORP Holdings, Inc. f/k/a MERSCORP Inc. ("MERSCORP") allowing Defendants use of the name non-party Mortgage Electronic Registration Systems, Inc. ("MERS") and access to the MERS® System, MERS® eRegistry, and MERS® Servicer ID that are all owned and operated by MERSCORP. The aforementioned Defendants named above in ¶¶4-10 as non-members / members of MERSCORP are hereafter collectively referred to as "Debt-Collector Defendants".

12.    Upon information and belief, Defendant Concrete Properties, LLC ("Concrete Properties") is a limited liability company organized and existing pursuant to the laws for the State of New York. Defendant is the successful bidder of the Referee Sale held September 20, 2019 and current title holder for the subject property. Defendant Concrete Properties may be served with process of this court upon any officer located at Defendant's primary address of 130 Crotty Road, Middletown, New York 10941.

### JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as this matter involves federal claims arising under federal law, thereby invoking the Court's federal question jurisdiction.

14.     This Court has personal jurisdiction over Defendants, as Defendants have had the requisite minimum contacts with the State of New York and Defendants have and continue to regularly conduct business in the State of New York.

15.     Venue lies in the United States District Court for the District of New York, as a substantial part of the property that is the subject of this action is located in the State of New York.

16.     Further, venue lies in the United States District Court for the District of New York, as a substantial part of the events or omissions upon which Plaintiffs' claims are based has occurred in the State of New York.

### FACTS COMMON TO ALL COUNTS

17.     On August 9, 2006, Plaintiffs Alfonso and Clemente were led to believe by Defendant Quicken and or its agents that Plaintiffs were executing and entering into a traditional original purchase mortgage loan consisting of a paper promissory note signed only by Alfonso and mortgage a security instrument (hereafter collectively referred to as the "mortgage loan") signed by both, wherein:

  a.  the note instrument designated Quicken as the "lender" suffering a real and ascertainable loss of $84,000.00 on August 9, 2006 to and for the benefit of Alfonso as the borrower, repayable in 360 installments of principal and interest starting October 1, 2006, along with amounts declared due and owing under a certain mortgage instrument dated the same.;

  b.  the mortgage dated August 9, 2006 and recorded by the Office of the Clerk for Orange County, New York ("Orange County Clerk") on July 18, 2007 designated Mortgage Electronic Registration Systems, Inc. ("MERS") with a

purported address of P.O. Box 2026, Flint, MI as the "mortgagee" acting as the alleged "nominee" for Quicken as the purported lender, and Quicken's successors and assigns, with the purported right to take any and all action that Quicken could have taken on its own (i.e. foreclosure, assignment and or discharge of the note and mortgage).; and

   c. the first page of the mortgage instrument displayed the acronym "MIN" followed by an 18-digit number of 1000390-4878360835-1.

18. Hence, the Plaintiffs aver that upon signing the aforementioned paper note and mortgage instruments dated August 9, 2006 and created by Defendant Quicken, Alfonso and Clemente were not aware and recently discovered that Quicken knew, should have known, omitted and concealed that:

   a. Quicken was not a depository financial institution capable of originating mortgage loans using its own reserves and or deposits, therefore, could not and did not suffer a real and ascertainable loss of $84,000.00 and $45,000.00 from Defendant's personal reserves and or deposits.;

   b. Quicken relied on table funded commitments supplied by third-party warehouse lenders[1] in order to originate the mortgage loan in dispute as the

---

[1] Citing *Real Estate Finance – Theory and Practice, Third Edition* by Terence M. Clauretie of the University of Nevada, Las Vegas and G. Stacy Sirmans of Florida State University defining mortgage origination by mortgage bankers using "Warehouse Lending" as: "Mortgage Bankers have two principal sources of funds... A second source of funds for mortgage bankers is short-term loans from commercial banks; these are called warehouse loans. A mortgage banker will ask for a line-of-credit for, say, $2 million. The mortgage banker will agree to a compensating balance, usually 20 percent of the maximum line-of-credit. As mortgage loans are made from this line-of-credit, the mortgage banker will pledge those loans as collateral for the line-of-credit. That is, when the mortgage banker originates a mortgage for $100,000, he will simultaneously "take down" $100,000 of the $2 million line-of-credit and pledge the mortgage note for collateral. After the mortgage banker has originated $2 million in mortgages, he will sell them to an investor. The proceeds of the sale will pay off the line-of-credit at the commercial bank..." (*Id*. at Page 278).

purported lender in "name only", and as a member of MERSCORP, Quicken had access to warehouse lenders,[2] and the Defendant willfully omitted the name and identity of the actual funding source from the mortgage loan in dispute.;

c. Quicken, as a member of MERSCORP, created and caused a transferable record a/k/a eNote ("electronic note")[3] to become part of the mortgage loan in dispute because according to MERSCORP, "MIN" is an acronym for "Mortgage Identification Number" and, together with the 18-digit number following the MIN inserted on page one of the mortgage instrument dated

---

[2] See the *"Investor Letter Agreement"* document that was retrieved (and is no longer accessible) on the MERSCORP website at http://mersinc.org/join-mers-docman/7-final-investor-letter-for-tpo-applications-2013-06/file, declaring in part that: "Investors agrees to the following:  *TPO Member will originate MERS Loans for Investor under a committed table funded arrangement.  *Investor will acquire the MERS Loans from TPO Member with servicing released to Investor and Investor will register such MERS Loans on the MERS(r) System....".  See also the "ELECTRONIC TRACKING AGREEMENT WAREHOUSE LENDER" document that was retrieved (and is no longer accessible) on the MERSCORP website at http://mersinc.org/join-mers-docman/5-eta-warehouse-template-v9/file, stating in relevant part that: "the Borrower lending money to potential homeowners for mortgage loans (the "Mortgage Loans") pursuant to the terms and conditions of a Mortgage  Warehouse Loan and Security Agreement dated as of _____ between the Lender and Borrower, as amended from time to time (the "_____ Agreement").  WHEREAS, the Borrower is obligated to pledge the Mortgage Loans to the Lender and also to service the Mortgage Loans pursuant to the terms and conditions of the _____ Agreement and to complete all actions necessary to cause the issuance and delivery to the Lender of the Mortgage Notes (the "Mortgage Notes"),...".

[3] See NY UCC § 9-105.

August 9, 2006 (1000390-4878360835-1) serves as the "unique identifier"[4] for an electronic note registered on the MERS® eRegistry.;[5]

d.  Plaintiff Alfonso never gave his explicit consent for the aforementioned electronic note to exist[6] and never electronically signed the electronic note instrument as required by law[7] and, therefore, someone other than Alfonso authored his electronic signature upon the electronic note that was registered on the MERS® eRegistry and made part of the mortgage loan in dispute by Defendant Quicken, its successors and or assigns.;

e.  Quicken, misrepresenting itself as Plaintiffs' lender, converted Plaintiff from a "mortgagor" into a securities issuer as defined under Article 9 of NY UCC, and used the aforementioned electronic note that was made part of the mortgage loan in dispute and registered on the MERS® eRegistry in order to create and issue a/k/a sale "Mortgage Backed Securities" ("MBS"), Collateralized Debt Obligations ("CDO"), and derivates[8] using the Plaintiffs' collateral.; and

---

4 See the MERSCORP publication titled *"eNotes Speed. Security. Efficiency. The future of mortgage lending."* that was retrieved (and is no longer accessible) on the MERSCORP owned and operated website at https://www.mersinc.org/join-mers-docman/1182-mers-eregistry-online-brochure-2016-3/file, wherein page five of six states that a "MIN" ("Mortgage Identification Number") is "the unique identification number for a registered eNote" .

5 See the MERSCORP – MERS website for ***Frequently Asked Questions - What is the MERS® eRegistry?"*** retrieved at https://mersinc.org/about/faq (last checked Sept. 18, 2019).

6 See Uniform Electronic Transactions Act ("UETA") (See 15 U.S.C. § 7021.  UETA §16).

7 See Electronic Signatures in Global and National Commerce Act ("ESIGN") (See 15 U.S.C. § 7001 et seq.).

8 For a general description and discussion of the derivatives market, *see generally* S. Das, Swap & Derivative Financing - The Global Reference to Products, Pricing, Applications and Markets 3-36 (1993).

Continued on following page

f. despite MERS' designation within the mortgage instrument dated August 9, 2006 as the "mortgagee" acting as the purported "nominee" for the non-existing entity Quicken and the latter's purported successors and assigns, MERS: (1) never extended credit or loaned its monies to the Plaintiffs;[9] (2) never took an economical or beneficial interest in the mortgage loan.;[10] (3) was contractually prohibited from taking any action on the mortgage loan including, but not limited to, foreclosure and or assignment;[11] and (4) never acted as a document custodian with physical possession of the mortgage loans.[12]

Plaintiffs further avers that despite MERS' designation within the aforementioned mortgage instrument in dispute as the purported "nominee" for the fictitious entity Quicken: (1) Plaintiffs were never presented with a power of attorney before, on, or after August 9, 2006 assigned to the

---

Continued from previous page

See also *"Derivatives And Rehypothecation Failure It's 3:00 p.m., Do You Know Where Your Collateral Is?."* by Christian A. Johnson Assistant Professor of Law, Loyola University Chicago School of Law. B.A.; MPrA, Utah; J.D., Columbia, 1990.

[9] See MERS' Appellant brief filed on October 15, 2004 in *Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent* (A-04-000786) (Id. at 22).; see also *The Certification of Mortgage Electronic Registration Systems, Inc.,* In Response to Administrative Order 01-2010 filed with the Superior Court of New Jersey for Docket No.: F-238-11(Id. at ¶¶4 and 9).

[10] Id.

[11] See the October 15, 2005 opinion and order entered by the Nebraska Supreme Court in *Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance,* 704 N.W.2d 784, 788 (Neb. 2005).

[12] As set forth on the *"Frequently Asked Questions"* section of the website owned and operated by MERSCORP, when asked: *"Does MERS have the documents for loans registered on the MERS® System?"*, MERSCORP and MERS declare that "No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files." See https://mersinc.org/about/faq (last checked Sept. 17, 2019).

mortgage loan in dispute as required under New York laws of agency and powers of attorney; (2) there were no power of attorneys annexed to the mortgage instrument upon recording by the Orange County Clerk on July 18, 2007; and (3) the alleged power of attorney referenced within the mortgage instrument recorded on July 18, 2007 remains unrecorded to present date.

19.     Thus, for the foregoing reasons set forth above within ¶18 and re-stated herein as though fully incorporated by reference, Plaintiffs aver the mortgage loan in dispute is falsely uttered and fraud *in factum*,[13] unconscionable, predatory (per se), and unenforceable under state, federal, and common law.

20.     Plaintiffs aver that Debt-Collector Defendants to this action each knew, should have known, and/or concealed the aforementioned facts set forth above in ¶18 from the Amelio's, and further concealed from the Plaintiffs that: (1) Quicken deliberately caused the original falsely uttered paper note in dispute to be destroyed and retained a scanned image (at best) upon causing the aforementioned electronic note to be unlawfully created and registered on the MERS® eRegistry / MERS® System; (2) Quicken pledged the falsely uttered mortgage loan by securitizing the forged electronic note that was registered on the MERS® eRegistry / MERS®

---

[13] Fraud in the factum occurs when a deed is forged or obtained from an individual who was induced to sign something completely different than what he or she thought they were signing (false pretenses) (GMAC Mtge. v Chan, 56 AD3d 521 [2d Dept 2008]; Dalessio v Kressler, 6 AD3d 57, 61-61 [2d Dept 2004] citing First Nat. Bank of Odessa v Fazzari, 10 NY2d 394 [1961]). When fraud in the factum applies, a deed may be deemed void ab initio and any mortgage that was obtained based upon such a deed is invalid. (US Bank Natl. Assn. v Mizell 2013 NY Slip Op 51065(U)); see also NY UCC § 3-305. Defenses and claims in recoupment, that states in part, that: "(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,…".; see also NYCL GBL § 349.

System to a trust entity for which Defendant Fannie Mae[14] serves as the issuer, trustee, master servicer, and or guarantor of timely payment of principal and interest payments to investors who purchased MBS; and (3) Defendants Quicken and Fannie Mae deliberately failed to memorialize the transfers of the electronic note through written assignment instruments recorded in the local land records to identify the certificate holders asserting beneficial interest in Plaintiffs' purported obligation to pay towards the falsely uttered – fraud in factum mortgage loan in dispute, constituting broken succession of title.

21.     Plaintiffs further aver the Debt-Collector Defendants knew, should have known, and / or concealed from the Amelio's that a portion of payments demanded towards the fraud *in factum* mortgage loan in dispute were reserved for and allotted to insurance premiums that paid insurances and reserves to cover the risk of Plaintiffs' default towards the mortgage loan that upon placement (via the electronic note registered on the MERS® System / MERS® eRegistry) into an undisclosed securitization trust created and operated by Defendant Fannie Mae, and that the premiums for these insurances and reserves were paid for by Plaintiffs from a portion of their interest payments.

22.     Unaware of the foregoing issues set forth within ¶¶18-21, Plaintiffs acted in good faith upon paying the first monthly installment of principal and interest, along with escrow items, that were demanded by the Debt Collector Defendants and/or their privies throughout the

---

14 Plaintiffs aver they discovered on or around March 28, 2018 by searching the MERS® Servicer ID at https://www.mers-servicerid.org/sis/, inputting the 18-digit MIN of 1000390-4878360835-1 inserted onto the first page of the mortgage in dispute, and entering A. Amelio's social security number which Plaintiffs never knew or consented for MERSCORP / MERS to take possession, that CIT Bank is the party desigantd as servicer for the mortgage loan and Defendant Fannie Mae is designated the investor a/k/a owner of the electronic note without Fannie Mae ever (to present date) forwarding the Plaintiffs any communication as the purported new creditor a/k/a owner with a legal right to demand and receive payment toward the mortgage loan in dispute.

remainder of year 2006, 2007 and 2008, while MERS as the purported nominee for Quicken remained the "mortgagee" of record asserting ownership and possession of the fraud in factum mortgage loan in dispute, and without Plaintiffs ever receiving any *"Notice of Sale / Transfer"* from any of the Debt-Collector Defendants declaring themselves or another party to be the *"new creditor"* asserting ownership of Plaintiffs' fraud in factum mortgage loan in dispute.

23.  Upon information and belief, Defendant OneWest begin demanding monies from Plaintiffs towards the fraud in factum mortgage loan in dispute in or around the year 2008 without ever identifying itself as the "owner" entitled repayment towards the disputed obligation, while MERS as the purported nominee for Quicken remained the "mortgagee" of record asserting ownership and possession of the fraud in factum mortgage loan in dispute, and without Plaintiffs ever receiving any *"Notice of Sale / Transfer"* from any of the Debt-Collector Defendants declaring themselves or another party to be the *"new creditor"* asserting ownership of Plaintiffs' fraud in factum mortgage loan in dispute.

24.  According to communications forwarded to Alfonso by mail from Defendants FSC and OneWest on or about October 28, 2009, the Defendants falsely declared Plaintiff defaulted under the mortgage loan in dispute upon failing to make the monthly payment declared due and owing as of January 1, 2009 and demanded Alfonso tender payment to OneWest, while omitting and concealing from Plaintiff the foregoing facts set forth above in ¶¶18-21, specifically, that a portion of payments demanded towards the fraud *in factum* mortgage loan in dispute were reserved for and allotted to insurance premiums that paid insurances and reserves to cover the risk of Plaintiffs' default towards the mortgage loan upon placement (via the electronic note registered on the MERS® System / MERS® eRegistry) into an undisclosed securitization

trust created and operated by Defendant Fannie Mae, and that the premiums for these insurances and reserves were paid for by Plaintiffs from a portion of their interest payment.

25.     On or about October 28, 2009, Defendant OneWest created and caused title to the subject property to be further slander upon recording with the Orange County Clerk an instrument titled *Assignment of Mortgage* wherein OneWest designated MERS as the "assignor" of the fraud in factum mortgage in dispute (without asserting a transfer of the paper note) and OneWest declared itself to be "assignee" of the same on October 2, 2009 while, at all relevant times, OneWest and the remaining Debt-Collector Defendants knew (or should have known) the statements, signatures and notarization incorporated within were falsely uttered, forged and void *ab initio* because:

a. MERS never had ownership of Plaintiffs' paper note and/or mortgage in dispute.;

b. MERS and its parent company, MERSCORP, were both contractually prohibited from taking any action on Plaintiffs' paper note and/or mortgage in dispute.;

c. MERS never acted as a document custodian with physical possession of Plaintiffs' paper note and/or mortgage in dispute.;

d. the person whose name and alleged signature is displayed within as a purported "authorized signer" for MERS was, at all relevant times, employed by OneWest along with the Texas notary public whose false acknowledged is affixed thereto, and he / she: (1) lacked the capacity claimed; (2) lacked knowledge about the character, legality, amount due towards, ownership and

possession of the original mortgage loan; and (3) never physically held and /or inspected the original mortgage loan in dispute.

e. the Texas notary public whose name and purported signature is displayed within: (1) never witnessed the signature of the purported officer of MERS; and (2) never inspected the identification of the purported officer of MERS.;

f. there is no proof that MERS was ever appointed to act as an agent for Quicken.; and

g. the instrument fails to mention when and how the paper note in dispute was transferred and/or assigned.

26.     Defendants OneWest and FSC knew and/or should have known about the foregoing facts set forth in ¶25 and, despite said knowledge, the Defendant requested the slanderous instrument titled *"Assignment of Mortgage"* be returned to the Defendants upon recording by the Orange County Clerk.

27.     By complaint filed with the Supreme Court of New York – Orange County ("State Court") on or about December 18, 2009 and amended on or about December 23, 2009 ("State Court Debt Collection Action"), Defendants OneWest and FSC illegally commenced their attempted theft of the subject property using the state assisted foreclosure process under Index No. 14125/09 that was created by the New York State Legislature, by:

a. omitting and concealing from Plaintiffs and State Court Officials under Index No.: 14125/09 the aforementioned material facts set forth above in ¶¶18-21, rendering the mortgage loan in dispute fraud in factum and unenforceable.;

b. falsely designating OneWest as the purported owner of the fraud in factum mortgage loan in dispute while omitting and concealing from Plaintiffs and

State Court Officials under Index No.: 14125/09 that OneWest was merely a servicer, not an owner, for the fraud in factum mortgage loan in dispute.;

c. omitting and concealing the existence and location of the aforementioned forged – stolen electronic note that was made part of the fraud in factum mortgage loan, registered on the MERS® System / MERS® eRegistry and securitized to an undisclosed trust entity involving the participation of Defendant Fannie Mae.; and

d. deceptively presenting the aforementioned instrument titled "*Assignment of Mortgage*" recorded by the Orange County Clerk as evidence to assert OneWest became owner in possession of the original mortgage loan in dispute, while omitting and concealing the instrument was falsely uttered – forged – void ab initio for the matters of fact set forth above in ¶25.

28.     Throughout the duration of year 2009 and 2010, Defendants OneWest and FSC continued their attempted theft of the subject property and monies from Plaintiffs using the mail and wire, and by maintaining their unlawful State Court Action under Index No: 14125/09, while concealing from Plaintiffs and State Court Officials under Index No: 14125/09 the foregoing facts set forth above in ¶¶18-25, and without Plaintiffs ever receiving any "*Notice of Sale / Transfer*" from any of the Debt-Collector Defendants declaring themselves or another party to be the "*new creditor*" asserting ownership of Plaintiffs' fraud in factum mortgage loan in dispute as required by 15 U.S. Code § 1641(g).

29.     On April 13, 2011, while Defendants OneWest and FSC continued their attempted theft of the subject property and monies from Plaintiffs using the mail and wire, and by maintaining their unlawful State Court Action under Index No: 14125/09, the Debt-Collector

Defendants directly, and/or through their privies as servicers and/or service providers (not owners) of residential mortgage loans, became obligated to comply with the terms and conditions arising from the following consent orders issued by Federal Authorities to prohibit further engagement in unfair, deceptive and unlawful servicing and foreclosure practices including, but not limited to:

      a.  <u>In the Matter of OneWest Bank, FSB</u> (Order No.: WN-11-011), entered April 13, 2011; and

      b.  <u>In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems, Inc.</u> (OCC No. AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01), entered April 13, 2011.

30.    Despite its obligations pursuant to the aforementioned consent order issued by Federal Authorities against Defendant OneWest and non-party MERSCORP / MERS for whom OneWest is a member and Defendant FSC is a non-member affiliate, Defendants continued to engage in unfair, deceptive and unlawful servicing and foreclosure practices against the Plaintiffs throughout the year 2011, 2012 and 2013 upon continuing their attempted theft of the subject property and monies from Plaintiffs using the mail and wire, and by maintaining their unlawful State Court Action under Index No: 14125/09 wherein an order for summary judgment to OneWest was procured by the Defendants through their tampering with and fabricating evidence upon asserting false claims of ownership and possession by reciting the aforementioned instrument titled "Assignment of Mortgage" knowing the same to be falsely made – forged – void ab initio, and by concealing the aforementioned facts set forth above in ¶¶18-21 that renders the mortgage loan in dispute fraud *in factum*.

31.     Throughout and for the duration of years 2011, 2012 and 2013, the Plaintiffs never received any *"Notice of Sale / Transfer"* communications from Defendants OneWest, FSC and/or any of the remaining Debt-Collector Defendants who declared themselves or another party to be the *"new creditor"* asserting ownership of Plaintiffs' fraud *in factum* mortgage loan in dispute as required by 15 U.S. Code § 1641(g).

32.     On or about February 26, 2014, while Defendants OneWest and FSC continued their attempted theft of the subject property and monies from Plaintiffs using the mail and wire, and by maintaining their unlawful State Court Action under Index No: 14125/09 by falsely designating OneWest as owner in possession of Plaintiffs' fraud in factum mortgage loan in dispute, Defendant Ocwen entered a consent judgment in <u>Consumer Financial Protection Bureau, et al. v. Ocwen Loan Servicing, LLC, et al.</u> from the United States District Court for the District of Washington D.C. (Case No. 1:13-cv-02025-RMC), prohibiting Ocwen and its privies from further engagement in unfair, deceptive, and unlawful servicing and foreclosure practices in the State of New York.

33.     On or about July 8, 2015, Defendant Ocwen created and caused title to the subject property to be further slander upon recording with the Orange County Clerk an instrument titled *"Corporate Assignment of Mortgage"* wherein Ocwen designated itself as assignor of the fraud in factum mortgage (without asserting a transfer of the paper note) as the purported "attorney-in-fact" for OneWest and Ocwen declared itself to be "assignee" of the same as of October 31, 2014 while, at all relevant times, Ocwen and the remaining Debt-Collector Defendants knew (or should have known) the statements, signatures and notarization incorporated within were falsely uttered, forged and void *ab initio* because:

a.  OneWest never took ownership and/or possession of Plaintiffs' original paper note and mortgage in dispute by way of and as falsely declared within the aforementioned instrument titled "*Assignment of Mortgage*".;

b.  the person whose name and alleged signature is displayed within as a purported "authorized signer" for OneWest was, at all relevant times, employed by Ocwen along with the Iowa notary public whose false acknowledged is affixed thereto, and he/she: (1) lacked the capacity claimed; (2) lacked knowledge about the character, legality, amount due towards, ownership and possession of the original mortgage loan; and (3) never physically held and /or inspected the original mortgage loan in dispute.;

c.  the Iowa notary public whose name and acknowledge is affixed within: (1) never witnessed the signature of the purported officer of OneWest; and (2) never inspected the identification of the purported officer of OneWest.;

d.  there is no proof that Ocwen was ever appointed to act as an agent for OneWest.; and

e.  the instrument fails to mention when and how the paper note in dispute was transferred and/or assigned.

34.     On or about November 16, 2015, Defendant Ocwen, Fannie Mae and/or Seterus created and caused title to the subject property to be further slander upon recording with the Orange County Clerk an instrument titled "*Assignment of Mortgage*" wherein Ocwen is designated as assignor of the fraud in factum mortgage (without asserting a transfer of the paper note) and Defendant Fannie Mae is designated "assignee" of the same on September 18, 2015 while, at all relevant times, the Debt-Collector Defendants knew (or should have known) the

statements, signatures and notarization incorporated within were falsely uttered, forged and void *ab initio* because:

    a. OneWest never took ownership and/or possession of Plaintiffs' original paper note and mortgage in dispute by way of and as falsely declared within the aforementioned instrument titled "*Assignment of Mortgage*".;

    b. Ocwen never took ownership and/or possession of Plaintiffs' original paper note and mortgage in dispute by way of and as falsely declared within the aforementioned instrument titled "*Corporate Assignment of Mortgage*".;

    c. the person whose name and alleged signature is displayed within as a purported "Assistant Secretary" for Ocwen: (1) lacked the capacity claimed; (2) lacked knowledge about the character, legality, amount due towards, ownership and possession of the original mortgage loan; and (3) never physically held and /or inspected the original mortgage loan in dispute.;

    d. the Minnesota notary public whose name and acknowledge is affixed within: (1) never witnessed the signature of the purported officer of Ocwen; and (2) never inspected the identification of the purported officer of Ocwen.; and

    e. the instrument fails to mention when and how the paper note in dispute was transferred and/or assigned.

35. Plaintiffs further aver the aforementioned instrument titled "*Corporate Assignment Of Mortgage*" recorded by Ocwen on July 8, 2015, along with the instrument titled "Assignment of Mortgage" that was recorded by Ocwen, Seterus and/or Fannie on November 16, 2015 constitute Ocwen's continued engagement in unlawful practices cited within the December 19, 2013 civil complaint in <u>The New State of New York, et al. v. Ocwen Loan Servicing, LLC,</u>

et al. (Case No. 1:13-cv-02025-RMC) and prohibited by the consent judgment entered therein on February 26, 2014 upon incorporation false statements, imposters and false acknowledgments.

36.    Throughout and for the duration of years 2014, 2015, 2016 and 2017, the Plaintiffs never received any *"Notice of Sale / Transfer"* communications from Defendants OneWest, FSC, Ocwen, Fannie Mae and/or any of the remaining Debt-Collector Defendants who declared themselves or another party to be the *"new creditor"* asserting ownership of Plaintiffs' fraud in factum mortgage loan in dispute, as required by 15 U.S. Code § 1641(g).

37.    For the duration of the years 2014, 2015, 2016 and 2017, Defendants FSC and MWC as third-party debt collectors continued their attempt theft of the subject property and monies from the Plaintiffs upon maintain the State Court Action under Index No: 14125/09 by maintaining their false statement that OneWest was the owner in possession of the fraud in factum mortgage loan in dispute, despite the aforementioned competing claims of transfer, assignment, ownership and possession of the mortgage in dispute by Ocwen as the purported owner and assignee as of October 31, 2014 and Fannie Mae as the purported assignee as of September 18, 2015, that were concealed from the Plaintiffs and State Court Officials under Index No: 14125/09 by the Debt-Collector Defendants.

38.    On or about January 8, 2018, Defendants MWC, Seterus and Fannie Mae procured a final judgment under Index No.: 14125/09 against Alfonso (not Carmine) by tampering with and fabricating evidence, upon:

> a.  concealing from Alfonso and the State Court Officials the aforementioned facts set forth above in ¶¶18-21.;

b. reciting the three aforementioned instruments titled "*Assignment of Mortgage*" and/or "*Corporate Assignment of Mortgage*" knowing the instruments to be falsely uttered – forged – falsely acknowledged – void *ab initio*.;

c. Presenting a counterfeit and/or scanned image note instrument misrepresented to be a true copy of the original, and consisting of an undated stamp declared an indorsement in blank by Quicken, while knowing and concealing from the Plaintiffs and State Court Officials that: (1) the original paper note was deliberately destroyed by Quicken upon the latter's unlawful creation of the electronic note made part of the fraud in factum mortgage loan in dispute.; (2) the purported indorsement in blank was a stamp, not an original signature and/or marking; and (3) the name and alleged signature by the purported officer of Quicken displayed upon the stamp was an imposters who: (i) lacked the authority claimed therein; (ii) lacked knowledge about the character, legality, amount due towards, ownership and possession of the original mortgage loan; and (iii) never physically held and /or inspected the original mortgage loan in dispute.;

d. a false – defective certification in support (allegedly) made by a purported "Document Management Specialist" for Seterus, wherein: (1) name of the affiant, asserting to be an employee for Seterus, Inc. as the purported servicer for Fannie Mae, is not legible; (2) the unidentifiable affiant as an alleged employee of Seterus asserts to have personal knowledge of the books and records for OneWest while claiming tenure as an employee with Seterus, and never claiming tenure as an employee with OneWest; and (3) the

unidentifiable affiant as an alleged employee of Seterus declares that OneWest is the holder of the note and mortgage in dispute, and party entitled payment upon the note in dispute which is false and contradictory for foregoing reasons set forth above in ¶¶18-37.; and

e. substituting Fannie Mae into the State Court Action without motioning the court as required by CPLR 1003 and/or 1021.

39.    On September 20, 2018, Defendants MWC, Seterus and Fannie Mae illegally caused a Referee Sale of the subject property to occur, resulting in a Referee Deed in favor of Defendant Concrete Properties, while fully aware of the aforementioned issues set forth above in ¶¶18-38 which: (1) deprived the Debt-Collector Defendants any right to enforce and foreclose the fraud in factum mortgage loan in dispute; and (2) render the subject property's title clouded by way of the aforementioned forgeries created and recorded by the Debt-Collector Defendants.

40.    The aforementioned unlawful, deceptive and illegal practices by the Debt-Collector Defendants has caused the Plaintiffs severe emotional distress, loss and theft of monies paid towards the fraud in factum mortgage loan in dispute, and the unlawful / unjust transfer of title for for the subject property to Defendant Concrete Properties.

## CAUSES OF ACTION

### COUNT ONE
### ABUSE OF PROCESS
### AGAINST DEFENDANTS: MWC, FSC, SETERUS, FANNIE MAE, AND ONEWEST

41.    The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 as though fully incorporated herein by reference.

42.    The basic to the tort of malicious abuse of process is the requirement that the defendant perform further acts after issuance of process which represent the perversion or abuse

of the legitimate purposes of that process.

43.    The Defendants named herein to Count One engaged abuse of process after issuance of process in Index No: 14125/09 and illegally procured an Order of Final Judgment on January 8 2018 by tampering with and fabricating evidence.

44.    The Plaintiffs assert the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs.

## COUNT TWO
### FEDERAL FAIR DEBT COLLECTION PRACTICES ACT PURSUANT TO 15 U.S.C. §1692, ACTIONABLE PURSUANT TO 15 U.S.C. §1692K AGAINST DEFENDANTS:  MWC, SETERUS, FANNIE MAE, AND ONEWEST

45.    The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One, as though fully incorporated herein by reference.

46.    15 U.S.C. § 1692d prohibits a debtor collector from engaging in any conduct which is to harass, oppress, or abuse any person in connection with the collection of a debt.

47.    Further, 15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt including, but not limited to, (1) The false representation of the character, amount, or legal status of any debt; (2) the representation or implication that nonpayment of any debt will result in the seizure or sale of any property of any person unless such action is lawful and the debt collector or creditor intends to take such action; the threat to take any action that cannot legally be taken or that is not intended to be taken.; (3) communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.; (4) the use or distribution of any written

26

communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.; (5) the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

48.     The Plaintiffs aver that for the reasons set forth above in ¶18 and re-stated herein as though fully incorporated by reference, the Defendants designated hereto in Count Two knew or they should have known the mortgage loan in dispute is falsely uttered and fraud *in factum*, unconscionable, predatory (per se), and unenforceable under state, federal, and common law.

49.     Plaintiffs further aver that for the reasons set forth above in ¶¶18-39 and re-stated herein as though fully incorporated by reference, the Defendants designated hereto in Count Two harassed and abused the Amelio's while using false and misleading representations to collect the unlawful debt associated with the falsely uttered – fraud in factum mortgage loan in dispute in violation of 15 U.S.C. §§ 1692d and 1692e.

50.     The Plaintiffs aver that the unlawful debt collection practices by the Defendants constitutes false and misleading representations in violation of the Federal FDCPA and has caused injury to the Plaintiffs as contemplated by 15 U.S.C. §1692 et seq., in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a fraud *in factum* debt, and other costs to defend the Plaintiffs' property and reputation.

**COUNT THREE**
**VIOLATION OF NYCL GBL § 349;**
**ACTIONABLE PURSUANT TO NYCL GBL § 349(h);**
**AGAINST DEFENDANTS: QUICKEN, ONEWEST, OCWEN, SETERUS and**
**FANNIE MAE**

51.     The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts

One through Two, as though fully incorporated herein by reference.

52.     The Defendants designated in Count Three have each used or caused to be employed by other persons unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and knowingly concealed, suppressed, and omitted material facts with intent that the Plaintiffs rely upon such concealment, suppression or omission, in connection with the "origination" of the "mortgage transaction' in dispute.

53.     The Plaintiffs aver the unfair, deceptive, and unlawful practices by the Defendants misled and deceived Alfonso, resulting in damages thereby, constituting unlawful practices in violation of NYCL GBL § 349, and has caused injury to Plaintiffs as contemplated by NYCL GBL § 349 et seq. in actual damages of emotional distress, loss of monies paid towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

54.     The actions of the Defendants, individually and/or jointly, were performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiffs.

**COUNT FOUR**
**VIOLATIONS OF FEDERAL CIVIL RICO (18 USC §1962(C));**
**ACTIONABLE PURSUANT TO 18 USC § 1964(C);**
**AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN**
**and FANNIE MAE**

55.     The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Three, as though fully incorporated herein by reference.

56.     The Defendants designated in Count Four constitute an "Enterprise" as defined in 18 U.S.C. §1961(4).

57.     The enterprise and or enterprises have an existence apart from and beyond the

racketeering activity complained of in this action.

58.     The Defendants designated in Count Four as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, violated the Federal Civil RICO statutes by conducting or participating, directly or indirectly, in the conduct of the affairs of an enterprise or enterprises, through a pattern of racketeering activity in violation of and 18 U.S.C. §1962(c).

59.     The acts by the Defendants designated in Count Four constitutes a pattern of racketeering activity that has continued and escalated beginning in or around August 9, 2006 and continues to present date.

60.     The acts by the Defendants designated in Count Four as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes prohibited activities in violation of 18 U.S.C. §1962(c) for the Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which they have participated as a principal within the meaning of 18 U.S.C. §1961(6) to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce.

61.     The acts by the Defendants as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes mail fraud in violation of 18 U.S.C. §1341 for the defendants devised a scheme to defraud, obtain money, or the subject property by means of false or fraudulent pretenses, representations, or promises, to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use counterfeit obligations, securities, for the purpose of executing such scheme or artifice, placed in post offices or authorized depository for mail matter, to be sent or delivered by the Postal Service, deposited, or

caused to be deposited, to be sent or delivered by private or commercial interstate carrier, or knowingly caused to be delivered by mail or such carrier.

62.     The acts by the Defendants as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes fictitious name in violation of 18 U.S.C. §1342 for the defendants, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341, or any other unlawful business, used or assumed, or requested others to be addressed by, fictitious, false, or assumed titles, or names, other than their own proper name.

63.     The acts by the Defendants as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes wire fraud in violation of 18 U.S.C. §1343 for the defendants devised or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted by means of wire in interstate commerce, writings for the purpose of executing such scheme or artifice.

64.     The acts by the Defendants as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes transportation of stolen goods, securities, moneys, and or articles used in counterfeiting in violation of 18 U.S.C. § 2314 for the defendants transported, transmitted, or transferred in interstate commerce, securities of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, and devised a scheme or artifice to defraud, for obtaining money or property from the Plaintiff by means of false or fraudulent pretenses, representations, or promises, transported or caused to be transported interstate in the execution or concealment of a scheme or artifice to defraud the Plaintiff of money or property having a value of $5,000 or more, with unlawful or fraudulent

intent, transported in interstate commerce falsely made, forged, altered, or counterfeited securities knowing the same to have been falsely made, forged, altered, or counterfeited.

65.     The acts by the Defendants as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes interference with commerce by threats or violence in violation of 18 U.S.C. § 1951 for the defendants have: (a) obstructed, delayed, or affected commerce by robbery or extortion or attempted or conspired so to do, or committed or threatened physical removal of Plaintiff from the subject property, and the taking of the subject property under color of official right.

66.     The aforementioned acts by the Defendants as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes laundering of falsely made monetary instruments in violation of 18 U.S.C. § 1956 because the Defendants: (1) knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with (i) the intent to promote the carrying on of specified unlawful activity; or (ii) the intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or knowing that the transaction is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law.

67.     The acts by the Defendants as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 upon the Defendants

knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity.

68.    The acts by the Defendants as set forth within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes misprision of felony in violation of 18 U.S.C. § 4 for the defendants had knowledge of the actual commission of a felony cognizable by a court of the United States, and concealed said knowledge, and did not as soon as possible make known the same to some judge or other person in civil or authority under the United States.

69.    The acts by Defendants MWC, FSC, Seterus, Ocwen, OneWest and Fannie Mae as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes impersonation in violation of NY Penal Law § 190.25.

70.    The aforementioned acts by the Defendants as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes scheme to defraud in violation of NY Penal Law § 190.60 upon the Defendants scheme constituting a systematic ongoing course of conduct with intent to defraud the Plaintiff to obtain property by false or fraudulent pretenses, representations or promises, and so obtained property.

71.    The aforementioned acts by Defendants as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes forgery in violation of NY Penal Law § 170.05 for the Defendants intended to defraud, deceive, and/or injure the Plaintiff by falsely making, completing or altering the aforementioned instrument complained of herein.

72.    The aforementioned acts by the Defendants as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes forgery in violation of NY Penal Law § 170.10 for the Defendants with intent to defraud, deceived and/or injured the Plaintiff by falsely making, completing and/or altering the instruments complained of herein.

73.     The aforementioned acts by the Defendants as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes possession of forged instruments in violation of NY Penal Law § 170.20 for the Defendants, with knowledge that the aforementioned instruments complained of herein are forged and with intent to defraud, deceive and/or injured the Plaintiffs, uttered or possessed the forged instruments complained of herein.

74.     The aforementioned acts by the Defendants as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes possession of a forged instrument in violation of NY Penal Law § 170.25 for the Defendants, with knowledge that the aforementioned instruments complained of herein are forged and with intent to defraud, deceive and/or injured the Plaintiff, the Defendants uttered or possessed the forged instruments complained of herein.

75.     The aforementioned acts by Defendants as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes fraudulently obtaining signatures in violation of NY Penal Law § 165.20 wherein the Defendants, with intent to defraud or injure the Plaintiff, obtained the signatures of persons to written instruments by means of misrepresentations of fact which the Defendants knew to be false.

76.     The aforementioned acts by Defendants as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes offering a false instrument for filing in violation of NY Penal Law § 175.35 wherein the Defendants, knowing that the aforementioned written instruments contained false statements or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, the Defendants presented the false instruments to public offices, public servants, or public authority(s) with the knowledge or belief that the false instruments would be

filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, or public.

77. The aforementioned acts by Defendants MWC, FSC, OneWest, Seterus and Fannie Mae as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes tampering with physical evidence in violation of NY Penal Law § 215.40 wherein the Defendants, with intent that the aforementioned instruments be used or introduced in an official proceeding or a prospective official proceeding,: (a) knowingly made, devised or prepared false physical evidence, or (b) produced or offered such evidence at such a proceeding knowing it to be false; or believing that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, the Defendants suppressed it by acts of concealment, alteration or destruction.

78. The aforementioned acts by Defendants as set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, constitutes tampering with public records in violation of NY Penal Law § 175.25 wherein the Defendants, knowing that they did not have the authority of anyone entitled to grant it, and with intent to defraud, knowingly made false entries in any record or other written instruments filed with, deposited in, or otherwise constituting a record of a public office or public servant.

79. The Plaintiff avers that the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff.

80. The acts by the Defendants violates 18 USC §1962(c)) and has caused injury to

the Plaintiff as contemplated by 18 USC § 1964(c), in actual damages of emotional distress, loss of monies paid by the Plaintiff towards the fraud in factum "mortgage transaction", and other costs to defend the Plaintiff's property.

## COUNT FIVE
### CONTINUAL ACTS OF FRAUD
### IN VIOLATION OF APPLICABLE CONSENT ORDERS AND JUDGMENTS;
### AGAINST DEFENDANTS: OCWEN

81.     The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Four as though fully incorporated herein by reference.

82.     Defendant Ocwen knew or should have known about, and willfully disregarded the consent judgment entered on February 26, 2014 in Consumer Financial Protection Bureau, et al. v. Ocwen Loan Servicing, LLC, et al. by the United States District Court for the District of Washington D.C. (Case No. 1:13-cv-02025-RMC), prohibiting Ocwen and its privies from further engagement in unfair, deceptive, and unlawful practices related to the foreclosure of residential "mortgage loans" including, but not limited to,: (i) creating falsely made – forged – falsely acknowledged instruments misrepresenting the transfer and / or assignment of "mortgage loans", displaying imposters, and false notarizations; (ii) recording with local recorder of deeds and filing in judicial proceedings falsely made – forged – falsely acknowledged instruments; (iii) commencing judicial foreclosure actions by misrepresenting the ownership of "mortgage loans"; and (iv) submitting false pleadings and certifications in judicial and bankruptcy proceedings.; and (2) Ocwen was required to: (i) engage in earnest modification efforts with consumers to avoid foreclosures; and (ii) remediate any harm caused to consumers.

83.     Hence, the Plaintiffs assert the aforementioned acts by the Defendant set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice,

performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and with disregard for the aforementioned consent orders and judgments.

## COUNT SIX
### UNJUST ENRICHMENT;
### AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN and FANNIE MAE

84. The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Five, as though fully incorporated herein by reference.

85. In establishing a claim for unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.

86. As a result of its misrepresentations underlying the falsely uttered - fraud in factum mortgage loan, including a forged and stolen electronic note that was made part of the transaction in dispute, the Defendants have been unjustly enriched at the expense of the Plaintiffs.

87. It is clear that Defendants, either through intentional actions or gross negligence, are attempting to gain possession of Plaintiffs' property through an unlawful Referee sale.

## COUNT SEVEN
### NEGLIGENT MISREPRESENTATION;
### AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN and FANNIE MAE

88. The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Six as though fully incorporated herein by reference.

89. At all relevant times, the Defendants made negligent and false representations as to: (1) the character, legality, ownership, possession, and actual amount due and owing for the falsely uttered – fraud in factum mortgage loan in dispute; (2) the authenticities of the

36

instruments asserting to be true copies of the original note and mortgage; and (3) the authenticity of the instruments asserting transfers of the mortgage and/or note in dispute, without any reasonable ground for believing their representations to be true, with the intent to induce the Plaintiff into believing the defendant's representations, causing the Plaintiff to act upon as the defendant's desires, and causing injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a fraud *in factum* "mortgage transaction", and other costs to defend the Plaintiffs' property and reputation.

90.     Hence, the Plaintiffs assert the aforementioned acts by the Defendants set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and with disregard for the aforementioned consent orders and judgments.

**COUNT EIGHT**
**FRAUDULENT CONCEALMENT;**
**AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN**
**and FANNIE MAE**

91.     The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Seven as though fully incorporate herein by reference.

92.     At all relevant times, the Defendants have each concealed from the Plaintiffs the truth as it pertains to: (1) the character, legality, ownership, possession, and actual amount due and owing for the falsely uttered – fraud in factum mortgage loan in dispute; (2) the authenticities of the instruments asserting to be true copies of the original note and mortgage; and (3) the authenticity of the instruments asserting transfers of the mortgage and/or note in dispute, without any reasonable ground for believing their representations to be true, with the intent to prohibited Plaintiffs from taking action contrary to the defendant's desires, and causing

injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a fraud *in factum* "mortgage transaction", and other costs to defend the Plaintiffs' property and reputation.

93.    Hence, the Plaintiffs assert the aforementioned acts by the Defendants set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and with disregard for the aforementioned consent orders and judgments.

## COUNT NINE
## CONSTRUCTIVE FRAUD;
## AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN and FANNIE MAE

94.    The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Eight as though fully incorporated herein by reference.

95.    At all relevant times, the Defendants have each: (1) made false representations as it pertains to: (i) the character, legality, ownership, possession, and actual amount due and owing towards the falsely uttered – fraud in factum mortgage loan in dispute; (ii) the authenticity of the aforementioned instruments purported to be true copies of the original note and mortgage; (iii) the authenticities of the instruments asserting to be true copies of the original note and mortgage; and (iv) the authenticity of the instruments asserting transfers of the mortgage and/or note in dispute; (2) for the purpose of inducing the Plaintiffs to reply on such representations, (3) for which the Plaintiffs justifiably relied; and (4) caused injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a *fraud in factum* transaction, and other costs to defend the Plaintiffs' property and reputation.

96.    Hence, the Plaintiffs assert the aforementioned acts by the Defendants set forth

above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and with disregard for the aforementioned consent orders and judgments.

**COUNT TEN**
**CIVIL AIDING AND ABETTING FRAUD;**
**AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN**
**and FANNIE MAE**

97.     The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Nine as though fully incorporated herein by reference.

98.     The Defendants to Count Eleven have aided and abetted the unfair, deceptive, and unlawful practices by each Defendant in order to assist the attempted and actual theft of monies and the subject property from Plaintiffs arising from the falsely uttered mortgage loan in dispute.

99.     The Plaintiffs assert the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and has caused injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiffs' property and reputation.

100.    Hence, the Plaintiffs assert the aforementioned acts by the Defendants set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and with disregard for the aforementioned consent orders and judgments.

**COUNT ELEVEN**

**WILLFUL AND WANTON GROSS NEGLIGENCE;**
**AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN**
**and FANNIE MAE**

101.    The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Ten as though fully incorporated herein by reference.

102.    At all relevant times, the Defendants each willfully and wantonly engaged in the unfair, deceptive, and unlawful practices to procure monies (directly and or indirectly) from Plaintiffs and to take (and or assist with the taking) of the subject property arising from the falsely uttered mortgage loan in dispute.

103.    Hence, the Plaintiffs assert the aforementioned acts by the Defendants set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and with disregard for the aforementioned consent orders and judgments.

**COUNT TWELVE**
**CIVIL CONSPIRACY TO DEFRAUD;**
**AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN**
**and FANNIE MAE**

104.    The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Eleven as though fully incorporated herein by reference.

105.    At all relevant times, the Defendants conspired together upon engaging in the aforementioned conduct to procure monies (directly and or indirectly) from Plaintiffs and to take (and or assist with the taking) of the subject property arising from the falsely uttered mortgage loan in dispute.

106.    Hence, the Plaintiffs assert the aforementioned acts by the Defendants set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, were

intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and with disregard for the aforementioned consent orders and judgments.

## COUNT THIRTEEN
## UNLAWFUL CONVERSION;
## AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN and FANNIE MAE

107. The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Twelve as though fully incorporated herein by reference.

108. Defendants have either asserted ownership, possession, and or rights to the falsely uttered – fraud in factum mortgage loan in dispute, all the while knowing, or should have known, that the transaction in dispute includes the unlawful conversion of an electronic note as described above in ¶17 and re-stated herein as though fully incorporated by reference.

109. Hence, the Plaintiffs assert the aforementioned acts by the Defendants set forth above within ¶¶17-40 and re-stated herein as though fully incorporated by reference, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and with disregard for the aforementioned consent orders and judgments.

## COUNT FOURTEEN
## INTENTIONAL AFFLICATION OF EMOTIONAL DISTRESS;
## AGAINST DEFENDANTS: MWC, FSC, ONEWEST, OCWEN, SETERUS, QUICKEN and FANNIE MAE

110. The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Thirteen as though fully incorporated herein by reference.

111. Plaintiffs aver the Defendants named herein to Count Fourteen were fully aware of the aforementioned issues set forth above and, despite said knowledge, willfully continued to

engage in their attempted and actual theft of monies and the subject property, without forethought and/or concern for the emotional well-being of Plaintiffs.

112.    Plaintiffs, in-return, endured extreme and severe psychological and emotional distress due to and resulting from the Defendants' willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs.

**COUNT FIFTEEN**
**SLANDER OF TITLE;**
**AGAINST DEFENDANTS: ONEWEST, OCWEN, SETERUS, QUICKEN**
**and FANNIE MAE**

113.    The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Fourteen as though fully incorporated herein by reference.

114.    The Defendants each knew, or they should have known, that the facts set forth above in ¶18 and re-stated herein as though fully incorporated by reference renders the mortgage instrument in dispute falsely uttered – fraud in factum, and the recording thereafter constituted slander of title.

115.    The Defendants named herein knew, or they should have known, that the instruments titled "ASSIGNMENT OF MORTGAGE" and or "CORPORATE ASSIGNMENT OF MORTGAGE" asserting transfers of the 1st mortgage loan in dispute, would constitute slander of title because the instruments contains: (1) misrepresentations regarding the alleged assignors and assignees; (2) false considerations declared paid to and from the falsely designated "assignors" and "assignees"; (3) imposters who lacked the capacities claimed, and lacked knowledge as to the character, legality, ownership, possession, and actual amount due and owing towards the 1st mortgage loan; and (4) false acknowledgements.

116.    The Plaintiffs assert the aforementioned acts on the part of the defendants were

intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Amelio's.

## COUNT SIXTEEN
### DECLARATORY RELIEF DECLARING THE MORTGAGE LOAN and FORGED – STOLEN ELECTRONIC NOTE, VOID AB INITIO PURSUANT TO NY UCC § 3-305;

117.     The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Fifteen as though fully incorporated herein by reference.

118.     The Plaintiffs re-aver that the mortgage loan in dispute is the product of fraud *in factum*, absence negligence on part of the Amelio's, and fraud *in factum* is a good defense even against a holder in due course, a status of which none of the Defendants can claim and prove.

119.     As set forth within NY UCC § 3-305. Defenses and claims in recoupment, that states in part, that: "(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,...".

## COUNT SEVENTEEN
### DECLARATORY RELIEF REQUIRING PRESENTMENT OF THE TWO FORGED – STOLEN ELECTRONIC NOTES PURSUANT TO 15 U.S.C. § 7021(f); AGAINST DEFENDANTS; QUICKEN, ONEWEST, OCWEN, SETERUS and FANNIE MAE

120.     The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Sixteen as though fully incorporated herein by reference.

121. Plaintiffs never knew about or gave their explicit consent for the two electronic notes that were made part of the mortgage loan in dispute to exist, as required by the Uniform Electronic Transactions Act ("UETA") (See 15 U.S.C. § 7021. UETA §16). Plaintiffs further aver they never electronically signed the electronic note that was made part of the mortgage loan in dispute and dated August 9, 2006 as required by Electronic Signatures in Global and National Commerce Act ("ESIGN") (See 15 U.S.C. § 7001 et seq.), and someone other than Plaintiff forged the electronic signature of Alfonso.

122. The electronic note in dispute have been assigned 18-digit "Mortgage Identification Numbers" ("MIN") of 1000390-4878360835-1 and registered on the MERS® eRegistry / MERS® System by the Defendants named herein to Count Fifteen.

123. As set forth in 15 U.S.C. § 7021 (f): "If requested by a person against which enforcement is sought, the person seeking to enforce the transferable record shall provide reasonable proof that the person is in control of the transferable record. Proof may include access to the authoritative copy of the transferable record and related business records sufficient to review the terms of the transferable record and to establish the identity of the person having control of the transferable record."

124. Hence, Count Sixteen herein constitutes Plaintiffs' first request for the Court to grant declaratory relief requiring the Defendants named to this court to provide Plaintiffs: (1) access to the authoritative copy of the electronic note assigned MIN 1000390-4878360835-1 and registered on the MERS® eRegistry / MERS® System; and (2) related business records sufficient to review the terms of the transferable record and to establish the identity of the person having control of the transferable record, as required by 15 U.S.C. § 7021(f) .

## COUNT EIGHTEEN
### QUIET TITLE;

**AGAINST DEFENDANTS; ONEWEST, OCWEN, SETERUS, FANNIE MAE and CONCRETE PROPERTIES**

125.    The Plaintiffs adopt the factual allegations set forth above in ¶¶17-40 and Counts One through Seventeen as though fully incorporated herein by reference.

126.    There is a dispute as to: (1) the legality of the mortgage loan in dispute; (2) the right of OneWest, Ocwen, Seterus and Fannie Mae to enforce the mortgage loan; (3) Fannie Mae's right to transfer title to Concrete Properties.

127.    At all times relevant hereto, Defendants and other entities related to Defendants have claimed an interest and/or estate in the Property adverse to Plaintiffs.

128.    Plaintiffs, therefore, allege that, upon information and belief, none of the Defendants herein hold a perfected and/or secured interest and/or claim in the Property and, as such, Defendants are estopped and precluded from asserting any claim against Plaintiffs' estate.

129.    There is currently no other forum for an adjudication of the dispute herein and there are no other adequate remedies at law.

**PRAYER FOR RELIEF**

The Plaintiffs pray for relief from this Honorable Court as follows:

I.      Awarding Plaintiffs compensatory and at least $500,000,000.00 in punitive damages against the Defendants named in Count One.;

II.     Awarding Plaintiffs the maximum amount of statutory damages allowable against the Defendants named in Count Two.;

III.    Awarding Plaintiffs compensatory, punitive, and treble damages (if applicable) to be determined against the Defendants named in Count Three.;

IV.     Awarding Plaintiffs $1,000,000.00 plus treble damages per predicate act, and per occurrence (to be determined) from each Defendant named in Count Four.

V.  Awarding Plaintiffs $1,000,000.00 per violation, and $5,000,000.00 each occurrence to be determined, against the Defendant(s) named in Count Five, and injunctive relief.;

VI.  Awarding Plaintiffs compensatory to be determined and $5,000,000.00 in punitive damages for each cause of action set forth throughout Count Five, Count Six, Count Seven, Count Eight, Count Nine, Count Ten, Count Eleven, Count Twelve, Count Thirteen, Count Fourteen and Count Fifteen, per Defendant named therein.

VII.  Declaratory Relief for Count Sixteen against Defendants named pursuant to NY UCC § 3-305, declaring the mortgage loan and electronic note in dispute, void ab initio.

VIII.  Declaratory Relief for Count Seventeen against Defendants named to Count Seventeen pursuant to 15 U.S.C. § 7021(f), requiring presentment of the electronic note associated with the mortgage loan, and registered on the MERS® eRegistry / MERS® Systems.

IX.  Declaratory Relief against Defendants named to Count Eighteen declaring Plaintiffs the lawful owner of the subject property, and awarding compensatory damages, attorneys fees, and other cost to Defendant Concrete Properties.

## CLAIMS RESERVED

The Plaintiffs herein reserve all claims against non-parties to this complaint that are not designated as Defendants in this matter, allowing the Plaintiffs an opportunity to discover all relevant facts and any and all claims against the non-parties.

## EQUITABLE TOLLING

The Plaintiffs herein invokes equitable tolling in order to preserve any and all claims recently discovered by the Plaintiffs, and or the conduct complained is continuous.

Dated: September 27, 2019

_____
Alfonso Amelio

Dated: September 27, 2019

_____
Clemente Amelio

Dated: September 27, 2019

_____
Carmine Amelio